## FANNETT et al. v. TOMPKINS.
### No. 2237.

Court of Civil Appeals of Texas. Beaumont.
April 21, 1932.

D. E. O'Fiel, of Beaumont, for appellants.

Chas. Cain, of Liberty, for appellee.

O'QUINN, J.

Appellant Myrtle Fannett, joined by her husband, Ras W. Fannett, brought this suit in the nature of habeas corpus proceedings, in the district court of Jefferson county, Tex., against appellee, James Tompkins, for the custody of Irene Tompkins, a girl about ten years of age. Mrs. Fannett and James Tompkins are the parents of the minor; they having formerly been husband and wife, and having been divorced. The child is the issue of their marriage.

Mrs. Fannett and Tompkins were divorced after living together for two or three years. The divorce decree did not dispose of the custody of the child. It appears that for a time after the divorce Mrs. Tompkins, now Mrs. Fannett, had the child, but in 1922 Tompkins got it and has had it until the filing of this suit, September 12, 1931. He says that he went and got the child because its mother, appellant Mrs. Fannett, wrote him to do so. She denies that she did so, and says he took the child while she was absent at work; but we do not think this point material. After being divorced from Tompkins, Mrs. Tompkins married her present husband, Ras W. Fannett, November 6, 1925.

Upon a trial, judgment was rendered denying appellant the custody of the child. From this judgment this appeal was taken.

Article 4639, R. S. 1925, empowers the court to give the custody of the child to either of its parents, as the court shall deem proper, having regard to the prudence and ability of the parents, and the age and sex of the child. In cases of this character, the best interest and welfare of the child are the paramount issues in determining to which of the divorced parents its custody should be given. In determining this supremely important question, the opportunities of the child to wholesome surroundings, morally and socially, opportunity for education, Christian culture and

training, associations with and influence of worth-while persons, calculated to impress the character, mind, and morals of the child, should be given controlling consideration. The evidence shows that appellant, Mrs. Fannett, has been happily married to her present husband, Ras W. Fannett, for more than six years, and that they reside in the city of Beaumont in what is known as the South Park section. Mr. Fannett is now and for six or seven years has been employed by the Magnolia Refinery, steadily working, earning $4.80 per day. They live within two blocks of the Magnolia school, one of the schools in the South Park system of public schools, which has a splendid rating as one of the best. Mr. Fannett has no children, not having been married before his marriage to appellant Myrtle Fannett, and there being no child by this marriage. He testified that he was fond of children, would be pleased to have this child in his family, and, if his wife was awarded the child, it was his intention to give it proper schooling, including music, care for it properly, and raise it to be a "Christian lady." He lives near to good schools, several churches, and the child would have the association of people in the best walks of life. Two of the head men of the Magnolia Refinery, under whom he worked, testified to his good character as a man, efficient and regular service as a workman, and good standing in the community. Mrs. Matherson, a music teacher, testified to the good character, neatness, and orderly home life of Mrs. Fannett. She testified that in her opinion Mrs. Fannett was a proper person to have the care and raising of the girl, and said that she, witness, being a mother, if she did not so believe would not say so. This same character of evidence relative to Mrs. Fannett was given by Mrs. Lloyd, a neighbor of Mrs. Fannett. She also indorsed as good the character, habits, and disposition of Mr. Fannett. C. M. Saxon and Ed Kribble, fellow workmen with Mr. Fannett, and who had known him for several years and been associated with him, testified to his integrity, ability to support, standing as a citizen, and man of morals, as in all particulars good.

It appears from the testimony of defendant Tompkins that he has no home, owns no land, no stock except four prairie ponies not in use, works mostly at small sawmills which are practically all shut down and have been for some time, and picks cotton for farmers at 50 cents per hundred; that he is constantly moving from place to place, staying mostly only a month or two at different places. At the time this suit was instituted he was living at a shutdown sawmill site in a one-room house where he and the child, a ten year old girl, slept, cooked, and ate in the one room; that the girl did the cooking and housekeeping; that he had one mattress bed, two sheets, three pillows, four quilts; no other furniture being mentioned. He and the child slept together in his one bed. The child, he said, had gone to school at times, was about through the third grade; sometimes went to church and Sunday school.

It was in evidence that Mrs. Fannett had constantly sought to locate Tompkins and the child for the past several years and could not locate him. Her present husband, Fannett, said that he and his wife had heard of Tompkins several times, and had gone to see if they could get the child, but that each time they found "he had just gone off somewhere": that when they located him this time they promptly went, and his wife requested that she be permitted to take the girl home with her and Tompkins refused, and, when his wife suggested that she would take her, Tompkins at once said she would not, went into the house, and reached as if to get a gun; that he told his wife there was a better way to get the child, and they drove off and filed this suit the next day.

The undisputed facts completely convince us that the present welfare of the child, and its good and safety in the future imperatively demand that its surroundings and associations be changed. If left in its present conditions and surroundings, we cannot see any hope of its ever receiving even a rural common school education, or of having the benefit of influences or associations that would promise the development of the child into an intelligent, useful, and Christian woman. The opportunities and influences of the mother's home do offer such, and the best interests of the child being the sole inquiry, the judgment of the trial court should be reversed and judgment here rendered for appellant. Accordingly, the judgment is reversed and here rendered for appellant, Mrs. Fannett, that she have the custody and control of her said daughter, Irene Tompkins.

Reversed and rendered.